*1091 OPINION OF THE COURT
Helen E. Freedman, J.
This court is again confronted with the issue of whether a law firm is responsible for work done at its request on behalf of a client in connection with an ongoing litigation. Plaintiff, a photocopying service, sues to recover $4,095.07, the cost of reproduction services rendered. Neither the amount nor value of the work is in dispute.
In December of 1977, defendants, the law firm of Ford Marrin Esposito Witmeyer & Bergman, hereinafter Ford Marrin, representing franchisees of Castro Convertible Showrooms, commenced an antitrust action in the Southern District of New York against Castro Convertible. Defendants in the antitrust case were represented by the law firm of Finley, Kumble, Wagner, Heine and Underberg, hereinafter Finley Kumble. The trial took place in late January or early February of 1978.
Both parties sought discovery, which required photoreproduction of newspaper advertising copy, most of which was under the control of Finley Rumble’s client. Lawrence Blades, an associate with Finley Kumble, testified that the parties agreed that he would be responsible for producing the copies and that each party would pay for the material it had requested. In order to expedite the reproduction, Blades engaged Blue Print Co., Inc., plaintiff herein. Blades testified that Blue Print was told that the work was being done for a litigation and was instructed to bill Ford Marrin for its share. The work was completed and that portion which was billed to Ford Marrin remains unpaid. The court notes parenthetically that Ford Marrin received neither legal fees nor disbursements from its clients.
Ford Marrin denies responsibility for the photocopying bills on two grounds: first, that the clients and not the law firm are responsible for the photocopying bills, pursuant to the rule that an agent is not liable for debts incurred on behalf of its principal; second, that Finley Kumble was never specifically authorized to obtain the services of Blue Print on behalf of Ford Marrin.
With respect to the latter argument, that Finley Kumble exceeded the scope of its authorization, Thomas Esposito of Ford Marrin stated that he was in charge of the antitrust litigation for his firm and that it was his understanding that *1092 each law firm was to bill the other’s clients for costs of discovery. He also testified that he had never spoken to Lawrence Blades. Rather, he had spoken with a Mr. Philbrin.
On the other hand, there is a letter in evidence from Ford Marrin to Blue Print dated March 29, 1978, indicating that Ford Marrin was in receipt of the bills and invoices from Blue Print. The letter states: "We are currently checking the invoices as against the materials which we received and you can expect payment shortly. I apologize for any inconvenience that has been caused by our delay.” The letter is signed by one Paul Bergman, who is no longer a partner in the firm.
There were a large number of documents that had to be produced in a relatively short period, pursuant to discovery orders sought by Ford Marrin. The heavy flurry of litigation activity was initiated by Ford Marrin. Under the circumstances, Finley Kumble behaved reasonably in authorizing Blue Print to photostat the newspaper clippings and to bill Ford Marrin. Whether Ford Marrin specifically agreed to, or merely acquiesced in the billing arrangements is not important. By requiring the copies of the advertisements, Ford Marrin in effect authorized Finley Kumble to be its agent for the purpose of procuring the photocopies. Moreover, the letter from Mr. Bergman to Blue Print acknowledges that the billing procedure was appropriate.
With respect to the claim that Ford Marrin was an agent for a disclosed principal, the court finds that Bonynge v Field (81 NY 159), Matter of May (27 NY2d 529), Legal Systems v Grossman (NYLJ, May 25, 1979, p 12, col 5), and J. P. & R. Advertising Agency v Glass, Greenberg, Irwin & Pellman (NYLJ, Oct. 9, 1979, p 12, col 4, affd NYLJ, Dec. 7, 1979, p 5, col 1) are inapposite. Those cases deal with an attorney’s liability for work ordered on behalf of his or her client. In each case, there was a clearly disclosed principal by virtue of the fact that either the printer, stenographer or advertising media actually printed or published the name of the principal. Here, the evidence adduced indicates that Blue Print was only told that the work was being done for a litigation. The names of the clients for whom the work was being done were not given to Blue Print. Moreover, Blue Print was specifically told to bill Finley Kumble and Ford Marrin, and was given to understand that the law firms were assuming liability.
To the extent that there was any possible question as to *1093 whether Ford Marrin was liable, here again the letter of Paul Bergman, then a partner at Ford Marrin, clearly conveys the impression that Ford Marrin was assuming responsibility for the bill and clearly ratifies the arrangement made originally between Blue Print and Finley Humble. Since he was a partner in the firm at the time of the occurrence, the actions of Bergman are binding upon the other partners. (Partnership Law, § 20.)
Although the court sympathizes with the unfortunate situation that defendant Ford Marrin is now in, having to bear the costs where it has never been compensated for its services, to impose the loss on either Blue Print or Finley Humble would create an equal, if not greater injustice.
Judgment in the sum of $4,095.07 plus costs and interest from January 31, 1978.